## Ex parte TSIANG HSI TSENG.

District Court, N. D. California, S. D.
February 8, 1928.

No. 19650.

Aliens ⊜▷31—Chinese held not to have lost status as bona fide student, which subjected him to deportation because he failed to attend school (Immigration Act 1924, § 4e [8 USCA § 204]).

Petitioner, admitted as a Chinese student under Immigration Act 1924, § 4e (8 USCA § 204), *held* not to have lost his status as a bona fide student under a rule of the department, on the ground that he "failed, neglected or refused" to attend school, where the evidence showed a persistent attempt to do so, partly unsuccessful because of ill health and the vacation intervals and term dates of the universities which he attended, nor because at times he did work on a Chinese newspaper without pay.

Habeas Corpus. Petition of Tsiang Hsi Tseng for writ to secure relief from order of deportation. Granted.

Austin Lewis, of San Francisco, Cal., for petitioner.

George J. Hatfield, U. S. Atty., and R. M. Lyman, Jr., Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

KERRIGAN, District Judge. This petition for habeas corpus is brought by Tsiang Hsi Tseng, who has been ordered deported upon the ground that he has failed to maintain the exempt status of student, under which he was admitted to the United States July 9, 1926. The section of the Immigration Act of 1924 applicable is as follows:

"Sec. 4 (e). An immigrant who is a bona fide student at least 15 years of age and who seeks to enter the United States solely for the purpose of study at an accredited school, college, academy, seminary, or university, particularly designated by him and approved by the Secretary of Labor, which shall have agreed to report to the Secretary of Labor the termination of attendance of each immigrant student, and if any such institution of learning fails to make such reports promptly the approval shall be withdrawn." 8 USCA § 204.

The rule of the Department of Labor concerning maintenance of student status and deportation for failure to do so states:

"Any immigrant student admitted to the United States as a nonquota immigrant under the provisions of subdivision (e), section 4, of the Immigration Act of 1924, who fails, neglects, or refuses regularly to attend the school, college, academy, seminary or university to which he has been admitted or who

otherwise fails, neglects, or refuses to maintain the status of a bona fide student, or who is expelled from such institution, or who engages in any business or occupation for profit, or who labors for hire, shall be deemed to have abandoned his status as an immigrant student, and shall on the warrant of the Secretary of Labor be taken into custody and deported."

Petitioner contends that there is no evidence in the record supporting the finding of the immigration authorities that he has abandoned his status as a student. It appears from the record that he entered the United States July 9, 1926, intending to enter Stanford University. The earliest date at which he could enter Stanford was October 1, 1926, for the autumn quarter, and he registered on that date. In the interval between his entry into the country and his registration at Stanford he wrote articles for a Chinese newspaper. In November, 1926, he applied for and received leave from Stanford, and began to do proof reading and other work for a Chinese paper, without salary. Shortly afterwards he received warning from the immigration authorities that he would lose his student status if he abandoned regular attendance upon a school or university. He thereupon registered for the winter quarter at Stanford, January 3, 1927, and continued his attendance there until March, when he again applied for leave on account of ill health, presenting a physician's certificate, stating that his lungs were affected and that he must rest. This was within two weeks of the end of the winter quarter. By a rule of the University, no leaves might be granted at that late date; the student, finding it necessary to drop out so near the end of the quarter, being graded incomplete in his work and disqualified from returning for a period of six months. Under this rule petitioner could not re-enter Stanford until January, 1928. He felt it necessary, nevertheless, to withdraw.

The next opportunity for university work open to him was at the University of California, in the intersession which begins in May. He registered at that time and completed his work June 26, 1927. He also applied for admission at the summer session and for the autumn term at the University of California, but was rejected because of an agreement between the University of California and Stanford University that they will not accept each other's students, disqualified for incomplete or unsatisfactory scholarship records. Petitioner then entered into correspondence to secure admission to Columbia University in New York. In July he was arrested in these deportation proceedings and has been held here pending the hearings. He was granted admission to Columbia University subsequent to his arrest, but has not been able to attend on account of the proceedings here.

We have here a consistent and uncontroverted history of constant attempts to continue petitioner's student status, certainly after his receiving warning from the immigration authorities. These attempts have been to some extent unsuccessful, partly on account of ill health, partly on account of the vacation intervals and term dates of the various universities involved. The evidence does not show, however, that petitioner has "failed, refused, or neglected" to attend school regularly. If a foreign student is disqualified for poor scholarship, and hence must seek a new institution, or drops out temporarily on account of illness, and loses the part of a regular term, he cannot be said on that account alone to lose his student status. Where all of the undisputed evidence shows constant and consistent efforts on the part of the student to continue his studies he does not "fail, refuse, or neglect" to maintain his status. It must be remembered that foreign students in this country suffer from various handicaps. They are in unfamiliar surroundings. The language in which classes are conducted is strange to them. The rule cannot be construed to require them to do more than in good faith to try to continue their studies until they either complete them to their own satisfaction or confess defeat.

It is true that petitioner engaged in certain newspaper activities during the time he was attending Stanford, and in the intervals in which no university was open to him. He received no pay for this work, and apparently it was merely an avocation. It cannot be said that such side issues are material in determining his student status, so long as he did not abandon his studies in their favor. The same time and energy spent in writing verse or in playing golf could hardly have been urged as a reason for deportation; newspaper articles and editorials are no more significant on the issue of student status than the avocations just mentioned.

The demurrer to the petition is overruled. The petition for a writ of habeas corpus is granted, with direction that the petitioner be forthwith dismissed from custody.